SOUTHERN MINING & REDUCTION COMPANY, INC.,
v. CRAIG.

4-7030                                          171 S. W. 2d 57

Opinion delivered April 12, 1943.

*John W. Nance,* for appellant.

*Boyd Tackett* and *Alfred Featherston,* for appellee.

McHANEY, J. Prior to September 25, 1940, appellee, S. L. Craig, a mining engineer, procured two 40-acre leases on lands in Pike county to mine cinnabar ore for the production of mercury. One of these tracts was leased from Lula Bell and is referred to as the "Lula Bell" lease. He had installed some machinery on this lease and had mined a small amount of ore. In order to obtain financial assistance to develop the mine further, on said date, he entered into a written contract with appellant, Southern Mining & Reduction Company, Inc., hereinafter referred to as Southern, by which it was to take over the two leases and finance and operate the mine on the Lula Bell lease. The contract provided, among other things, that Craig should assign the two leases to the Craig Mining Company, to be presently organized as a corporation, and, when organized, 42 per cent. of its capital stock should be issued and delivered to him in payment for his development work and mining equipment on the leases, and 58 per cent. of said stock should be issued and delivered to two other persons who should immediately assign same to Southern and it in turn agreed to comply with both leases so as to keep them in full force and effect. A further agreement of Southern and as consideration for said stock is, it was to furnish to Craig Mining Company funds necessary to pay the debts of S. L. Craig, not to exceed $1,400; "also to furnish all such additional funds as may be necessary to carry on mining operations, purchase mine equipment, pay minimum royalties, in order to keep and maintain in force and effect the said two mining leases." Paragraph 6 of said agreement reads as follows: "Upon any failure of Southern Mining and Development Company or its assignee or successor to fully comply with all the terms and conditions of this agreement, and/or all terms and conditions of either of the two leases first hereinabove described, same shall be deemed in law and

equity to be a failure of consideration for the assignment made and/or to be made by S. L. Craig to Craig Mining Company, and all rights and benefits accruing by virtue of said assignment to the assignee shall cease and determine, and ownership of said leases shall revert to S. L. Craig without any other act or deed upon the part of any party hereto; and may be fully carried into effect and shown of record by S. L. Craig making and recording an affidavit setting forth said forfeiture and the reasons therefor.''

The Craig Mining Company was organized and incorporated and said leases were assigned to it. Southern advanced a sum to pay Craig's debts and also purchased with its funds and installed at the mine on the Lula Bell lease machinery and equipment which appellee admitted to be of a value in excess of $40,000. Craig was retained as superintendent of the mine and had charge of its work. The mine was operated by Craig under the direction of Southern until, in June, 1941, Southern was compelled to borrow money to continue operations at the mine. Pursuant to proper resolution of its board of directors, Southern borrowed from ten of its stockholders as individuals sums of money from $500 to $2,500, evidenced by its promissory notes, dated from June 21, 1941, June 25, 1941, July 5, 1941, to August 6, 1941, all aggregating $10,000 and secured by a chattel mortgage, dated August 23, 1941, and covering all its personal assets, set out in an appended list attached to said mortgage. This mortgage was written in duplicate and was filed in both Clark and Pike counties, but was not signed by the president and secretary and was not acknowledged. When this omission was discovered, a new mortgage of like tenor and substance was properly executed and filed.

The mining venture proved unprofitable, Southern became financially involved and was unable to advance additional funds to continue operations and the mine was shut down. Appellee Craig thereafter brought suit against Southern, Craig Mining Company and the ten mortgagees mentioned as noteholders in said mortgage to cancel the assignment of said leases, to cancel said

chattel mortgage and for the appointment of a receiver for Southern. Complaint was filed and summons issued for appellants, Southern and Craig, on April 16, 1942.

No answer having been filed by Southern or Craig Mining Company, the court, on May 11, 1942, entered a default decree as to them. The court found that the consideration for the assignment of the leases had failed because Southern had not paid the consideration it agreed to pay for the 58 per cent. of the stock in Craig Mining Company, and has forfeited all its rights and benefits acquired by the assignment ". . . and all machinery and fixtures placed by it upon the Lula Bell lease . . . are subject to the liens as herein adjudicated, etc." Both corporations were found to be insolvent; that Craig Mining Company ordered the mine shut down "and thereby forfeited their rights as lessee under the Lula Bell lease"; that under the contract between Craig and Southern all the improvements, machinery, etc., placed on the property by Southern became and is now the property of Craig Mining Company, and were furnished to it in payment of 58 per cent. of its capital stock, and that same is subject to sale for payment of Craig Mining Company's debts. The court then entered its decree, reserving for future consideration the rights of the individuals under said chattel mortgage. It gave the receiver, theretofore appointed, certain directions. No decree was entered canceling the assignment of the leases, and none was entered with reference to the mine machinery, plant and equipment in accordance with the court's findings.

Thereafter, and within the time allowed after service, the individual appellants, Charles L. Garrett, et al., filed an answer to Craig's complaint and cross-complaint against him, Southern and Craig Mining Company, in which all the allegations of the complaint were denied and setting up affirmative defenses, asserting the validity of said mortgage given to secure money advanced by them, and praying judgment against Southern, and for forecloure. Craig Mining Company filed an answer to the cross-complaint of Garrett et al. admitting that

Southern was the owner of the property described in the chattel mortgage and disclaiming any interest therein. It denied that it had ever functioned as a corporation.

On September 14, 1942, the court entered its final decree herein by which said mortgage was held to be valid and binding as to 58 per cent. of the assets now in the hands of the receiver, but inferior to the claims of laborers and materialmen theretofore allowed; and each cross-complainant was awarded judgment against Southern for the amount of his note and interest, but that they have no lien against the 42 per cent. of said assets owned and paid for by S. L. Craig.

From that decree comes this appeal.

We think the trial court correctly sustained the validity of the chattel mortgage, but erred in limiting the lien thereof to 58 per cent. of the property covered by it. It correctly and by agreement ordered the property sold by the receiver and that the proceeds be applied, first, to the payment of costs, and second, to the payment of liens of laborers, materialmen and judgments theretofore rendered; but again erred in ordering that S. L. Craig be paid 42 per cent. of the total proceeds and that C. L. Garrett and others be paid the balance in proportion to their respective interests as therein adjudged; and subject to any further deduction which might thereafter be made for claims not already allowed, but now on file with the receiver; and the balance, if any, be paid to Southern.

The Craig Mining Company never really functioned as a corporation. It held the legal title by assignment of the leases as a stakeholder or escrow agent for the benefit of Craig and Southern, and, as between them, their agreement was in the nature of a partnership for the equipment, development and operation of the mine. Craig paid for his 42 per cent. interest in the whole by assigning the leases and personal property to Craig Mining Company and Southern paid for its 58 per cent. interest therein by expending a large sum of money, the amount of which is not definitely shown, but which was of the admitted then value of about $42,000, for ma-

chinery, buildings, equipment and development work, in addition to the payment of Craig's accumulated debts, and we do not think the evidence sustains a finding that Southern breached its contract so as to entitle Craig to a rescission. The contract did not bind Southern to continue, for any definite period of time, to expend money on a losing venture. No definite time having been fixed in the contract, it was only bound to continue for a reasonable time, and we think that operations from September, 1940, to the time the mine was shut down which was some time prior to April 15, 1942, during which time some mercury was produced, sold and the proceeds put back into operations, was a reasonable time. Southern was not required by the contract to continue to operate at a loss indefinitely and the proof shows that it not only expended all its own resources to the extent of insolvency, as found by the court, but induced ten of its stockholders to lend to it $10,000 additional which was also put in the venture. All these expenditures were made in the hope of making money for Craig and itself, and we think when the venture proved a failure, that the loss should be shared proportionately by them.

When we hold, as we do, that Southern substantially complied with its contract, it necessarily follows that the court erred in the respects stated above. The decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion, and to liquidate all the assets in the hands of the receiver of the court, including both leases, as a part of such assets, and to pay all debts, first, the costs, including receiver's fees; second, lien claimants; third, other valid debts; fourth, the mortgage indebtedness; and fifth, the remainder, if any, to Craig 42 per cent. and Southern 58 per cent. It is so ordered.

McFADDIN, J., dissents.

CARTER, J., absent and not participating.

McFADDIN, J., dissenting. The Southern Mining & Reduction Company, Inc., clearly breached its contract with appellee Craig; and upon such breach, appellee Craig had the right (1) to rescind the contract under § 6 thereof, or (2) to affirm the contract and sue for relief thereunder. It is my understanding that Craig pursued the latter course in this case. The chancery court, in rendering the decree herein, gave Craig relief on this theory. The decree of the chancery court—when viewed in this light—is not against the preponderance of the evidence; and should be affirmed.